# EXHIBIT A




**Corporate Creations Network Inc.**
801 US Highway 1 North Palm Beach, FL 33408

Massachusetts Mutual Life Insurance Company
Jennifer Antaya Senior Paralegal
MassMutual - Massachusetts Mutual Life Insurance Company
1295 State Street
Springfield MA 01111

June 07, 2024

# SERVICE OF PROCESS NOTICE

Item: 2024-217

The following is a courtesy summary of the enclosed document(s). **ALL information should be verified by you.**

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard. IMPORTANT: All changes or updates to the SOP contact individuals or their contact information must be submitted in writing to SOPcontact@corpcreations.com. Any changes will become effective upon written confirmation of Corporate Creations.

| | | |
|---|---|---|
| 1. | **Entity Served:** | Massachusetts Mutual Life Insurance Company |
| 2. | **Title of Action:** | Terry D. Altman vs. Massachusetts Mutual Life Insurance Company |
| 3. | **Document(s) Served:** | Summons<br>Verified Complaint For Damages and Declaratory and Injunctive Relief<br>Exhibits<br>Letter |
| 4. | **Court/Agency:** | State of Michigan 31st Judicial Circuit Court |
| 5. | **State Served:** | Michigan |
| 6. | **Case Number:** | 24-001151-NZ |
| 7. | **Case Type:** | Breach of Contract |
| 8. | **Method of Service:** | Certified Mail |
| 9. | **Date Received:** | Thursday 06/06/2024 |
| 10. | **Date to Client:** | Friday 06/07/2024 |
| 11. | **# Days When Answer Due:**<br>**Answer Due Date:** | 15<br>Friday 06/21/2024<br>CAUTION: Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **Sop Sender:**<br>(Name, City, State, and Phone Number) | Mary A. Owens<br>Grand Rapids, MI<br>616-742-0431 |
| 13. | **Shipped To Client By:** | Email Only with PDF Link |
| 14. | **Tracking Number:** | |
| 15. | **Handled By:** | 231 |
| 16. | **Notes:** | None. |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process. To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective. It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.

Approved, SCAO

Original - Court
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | |
|---|---|---|
| JUDICIAL DISTRICT | SUMMONS | 24-001151-NZ |
| 31st JUDICIAL CIRCUIT | | Lane |
| COUNTY | | |

**Court address**
201 McMorran Blvd, Port Huron, Michigan 48060

**Court telephone no.**
810-985-2031

Plaintiff's name, address, and telephone no.
Terry D. Altman
10245 Dixie Hwy, Apt 7
Fairhaven, Michigan 48023

v

Defendant's name, address, and telephone no.
Massachusetts Mutual Life Insurance Company
Attn: Law Department
1295 State Street
Springfield, MA 01111

Also c/o Resident Agent
Corporate Creations
28175 Haggerty Road
Novi, MI 48377

RECEIVED ANGIE WATERS
2024 MAY 31 AM 11:25
ST. CLAIR COUNTY CLERK

Plaintiff's attorney, bar no., address, and telephone no.
Mary A. Owens P-33896
124 E. Fulton, Ste. 100
Grand Rapids, Michigan 49503

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐ ______________________ Court, where it was given case number ______________ and assigned to Judge ______________________

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| MAY 3 1 2024 | 91 DAYS | ANGIE WATERS |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

RECEIVED ANGIE WATERS 05-31-2024 10:26:01 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED



MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAINT CLAIR

TERRY D. ALTMAN,

Plaintiff, Case # 24- -CZ

v. Hon.

MASSACHUSETTS MUTUAL
LIFE INSURANCE COMPANY,

Defendant.

Mary A. Owens, P-33896
Attorney for Plaintiff
124 E. Fulton, Ste. 100
Grand Rapids, Michigan 49503
(616) 742-0431

**VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**

Now comes Terry D. Altman, Plaintiff, by his attorney, Mary A. Owens, and for Complaint against Defendant, Massachusetts Mutual Life Insurance Company, states as follows:

1. Plaintiff resides in St. Clair County, Michigan.

2. Defendant is a Massachusetts corporation doing business in St. Clair County, Michigan.

3. This Complaint arises out of a breach of an insurance contract between Plaintiff and Defendant. In addition, Plaintiff is seeking declaratory and injunctive relief.

3. The amount in controversy exceeds $25,000.

**FACTUAL ALLEGATIONS**

4. On May 18, 1988, Plaintiff applied for a disability income insurance policy from Connecticut Mutual Insurance Company, the predecessor to Defendant, Mass Mutual. A copy of Plaintiff's Application No. 088099 is attached as Exhibit 1.

5. In applying, Plaintiff worked with Defendant's agent, Sharon Viano. During the sales process, Ms. Viano asked Plaintiff whether he wanted the term to be until age 65 or for life. Specifically, Ms. Viano initially told Plaintiff that the premium would be a certain number, and asked him – "upselling him" – whether he wanted to extend the duration of the policy to a lifetime term. Plaintiff replied that he wanted a lifetime policy. Ms. Viano left Plaintiff's office where Plaintiff and she were talking about the policy, went to her own office down the hall, and when Ms. Viano returned, she gave Plaintiff a higher premium price for the lifetime benefit, which Plaintiff paid.

6. On June 10, 1988, Defendant accepted the Application and issued policy No. 4771170, providing for a $5400 monthly benefit until age 65 in the case of disability. A duplicate copy of Policy No. 4771170 is attached as Exhibit 2.

7. On August 9, 1988, Ms. Viano asked Plaintiff to sign a supplemental application for Lifetime Accident and Sickness for "lifetime" disability benefits. A copy of the supplemental application is attached as Exhibit 3. This Supplemental application

was also made through Defendant's agent, Sharon Viano. Ms. Viano said that this supplemental application was for the lifetime policy, but Plaintiff believed he already had a lifetime policy, which he had paid for, by having already paid the higher premium.

8. In approximately late 1990-1991, Plaintiff became disabled and payments under the policy commenced soon after inception of his disability at the rate of $5400 per month.

9. On or about August 13, 2019, approximately one year after Plaintiff's 65th birthday, Defendant terminated his disability benefits, stating that the policy had expired on his 65th birthday.

10. Plaintiff began to inquire of Defendant why it had terminated his policy when he had been assured that his policy was issued for lifetime benefits. In the process of this inquiry, Plaintiff wrote numerous letters to Defendant and ultimately to the Michigan Department of Insurance and Financial Services (MDIFS) disputing Defendant's termination of his benefits.

11. In response to the inquiry by the Department of Insurance and Financial Services, Defendant stated that "the Rider [lifetime benefit rider] is not in force or binding until the application has been approved." See Exhibit 4, Letter of Kenneth Taffe to Tacarra Shelton, MDIFS.

12. Plaintiff also asked Ms. Viano about the policy, since he believed he always had a

lifetime benefit, and had paid for a lifetime benefit. In this conversation, Ms. Viano recalled (mistakenly) that the policy had a benefit of $7500 per month. Plaintiff corrected her by informing her that the policy was for a $5400 monthly benefit. She then told Plaintiff that the policy was supposed to be for a lifetime benefit and said that she would call Defendant about it. Ms.Viano phoned Plaintiff back and informed him that the policy was only until age 65 because Plaintiff had not filled out a form that she said was required.

13. However, when Plaintiff asked Defendant's employee, Kenneth Taffe, which form was not filled out, Mr. Taffe told Plaintiff that it was a new financial statement form that Ms. Viano was supposed to fill out within the financial section of the application.

14. Then, to corroborate the facts recited in Paragraph 12, and in response to Plaintiff's inquiries, Defendant sent the internal note to MDIFS, attached as Exhibit 5. In this note, Lydia Rockholt, Cathy Misener, apparently employees of Defendant, and Ms. Viano discussed that Plaintiff's policy could be for the original. Plaintiff obtained this internal document from the MDIFS. At all times, Plaintiff believed he had a lifetime benefit because he had paid the higher premium quoted by Ms. Viano, and she confirmed it numerous times during her many attempts to increase the coverage to a $7500 monthly benefit during that period of time.

15. Plaintiff does not know why these three individuals named above would have been discussing his policy at all, since Defendant had already issued the policy for $5400, which Plaintiff had agreed to and had in fact paid for. On information and belief, based on conversations with Defendant's employees, according to Defendant's practice, Plaintiff did not need to fill out a new financial form simply to extend the duration of the policy, only in case the monthly benefit was increased -- which it was not. And, at no time did Defendant send Plaintiff any sort of new "financial form" to be filled out.

16. Furthermore, at no time did Defendant provide Plaintiff with written notification that his lifetime benefit was not in force – until approximately his 65th birthday.

17. On information and belief, and after telephone conversations with Defendant's employees, a new financial form would not have been, according to them, necessary simply to extend the duration of the benefit. Rather, a new form (financial statement) would only be required if the monthly benefit amount were to be increased, such as from $5400 a month to $7500 a month, which, on further information and belief, reflected Ms. Viano's repeated attempts to "upsell" Plaintiff for an increased benefit for $7500 per month during that time.

18. It is documented within that internal memo (referenced above in paragraph 14) that Ms. Rockholt, Ms. Misener and Ms.Viano were discussing whether to only do the "original," while Plaintiff believed he had a policy for lifetime benefits at

$5400 per month, and Plaintiff has now learned that there was no reason to discuss the benefit duration because an updated financial form was not necessary as long as the benefit amount remained the same at $5400 per month.

19. Also, represented by the aforementioned memo, all of the above-mentioned conversations occurred without Plaintiff's prior knowledge. Defendant later informed Plaintiff that it had agreed to issue a supplemental rider for $5400 per month, subsequent to the noted memo discussions, without a new financial form in a letter dated July 25, 2023. See Exhibit 6, letter from Amy Riley. Here, Defendant confirmed, by its own actions, that a new financial form was not required for a $5400 monthly benefit.

**COUNT I - BREACH OF CONTRACT**

20. Plaintiff and Defendant had agreed upon a disability insurance contract whereby in return for the payment of annual premiums, Defendant would pay to Plaintiff lifetime disability benefits.

21. When the annual payment became due the next year after the policy was originally purchased, Ms.Viano entered Plaintiff's office requesting the annual payment. Plaintiff wrote a check for the amount requested by Ms.Viano and, while handing it to Ms. Viano, Plaintiff briefly held onto the check and asked, "This is for a lifetime benefit, right?" Ms.Viano confirmed by stating, "Yes." Plaintiff then released his hold on the check, giving sole possession to Ms. Viano, thereby

believing and confirming that he had a lifetime benefit.

22. Hence, Plaintiff believes he paid all premiums for a lifetime benefit when requested.

23. In August 2019, Defendant terminated the contract for lifetime benefits contrary to the agreement made with and confirmed by its agent, Ms.Viano.

24. Plaintiff has suffered damages in the form of unpaid benefits since the termination of the contract.

WHEREFORE, Plaintiff requests that a judgment be ordered requiring Defendant to pay all past due benefits, and such other benefits as may be appropriate, and reinstate his monthly benefit of $5400 for his lifetime.

**COUNT II - DECLARATORY AND INJUNCTIVE RELIEF**

25. Paragraphs 1-24 are incorporated by reference.

26. Plaintiff continues to suffer ongoing damages not remediable by a simple award of monetary damages for past unpaid benefits, and will suffer irreparable harm if injunctive relief is not granted, i.e., the deprivation of bargained-for benefits for the remainder of his life. Accordingly, Plaintiff has no adequate remedy at law.

27. Plaintiff is entitled to declaratory relief stating that a contract for lifetime disability benefits exists between Plaintiff and Defendant, and ordering Defendant to reinstate his policy of lifetime disability benefits of $5400 per month.

WHEREFORE, Plaintiff requests that this Court declare that the lifetime benefits Rider in the disability policy between Defendant and Plaintiff remains in effect and that Defendant reinstate the policy of lifetime disability benefits.

I swear that the above allegations are true to the best of my knowledge.

Date: 23 MAY 2024

Terry D. Altman

Date: 5/31/24

Mary A. Owens, P-33896
124 E. Fulton, Ste. 100
Grand Rapids, Michigan 49503
616-742-0431

9/21/18/5/11:35:40

088099

Connecticut Mutual Life Insurance Company
CM Life Insurance Company

PART I

COMBINATION LIFE AND DISABILITY APPLICATION

Life
X Disability

AGENCY NUMBER 001

COMPLETE FOR ALL CASES

A1. PROPOSED INSURED: *(first, middle, last)* TERRY D ALTMAN

A2. SEX: Female Male X

A3. Date of Birth: Month Day Year [redacted] 53

A4. Birth State: CANADA

A5. INSURED'S SOCIAL SECURITY NO. [redacted]4245

A6. *(Select one)* X OWNER'S SOCIAL SECURITY NO. [redacted]4245 TAX ID NO.

A7. POLICYOWNER NAME: *(If other than insured)* *(first, middle, last)*

A8. INSURED'S EMPLOYER NAME: DEAN WITTER

A9. *(If less than 2 years with current employer)* INSURED'S FORMER EMPLOYER NAME: EF HUTTON

A10. ADDRESS:

| | | | | |
|---|---|---|---|---|
| INSURED'S RESIDENCE | NUMBER/STREET: | [redacted] | | |
| | CITY/STATE/ZIP CODE: | BIRMINGHAM | MICHIGAN | 48009 |
| INSURED'S FORMER RESIDENCE | *(If less than 2 years at current residence)* NUMBER/STREET: | | | |
| | CITY/STATE/ZIP CODE: | | | |
| INSURED'S EMPLOYER'S ADDRESS | NUMBER/STREET: | 100 W. BIG BEAVER, SUITE 500 | | |
| | CITY/STATE/ZIP CODE: | TROY | MICHIGAN | 48084 |
| INSURED'S FORMER EMPLOYER | *(If less than 2 years with current employer)* | E.F. HUTTON, INC. | | |
| | NUMBER/STREET: | 2000 TOWN CENTER, # 1800 | | |
| | CITY/STATE/ZIP CODE: | SOUTHFIELD | MICHIGAN | 48075 |
| POLICYOWNER If Other Than Insured | NUMBER/STREET: | | | |
| | CITY/STATE/ZIP CODE: | | | |

F15A-86a

Exhibit 1

A11. PREMIUM NOTICES TO:

A. LIFE INSURANCE: Proposed Insured: Residence Employer Other (If other, indicate name and address below)
Policyowner: Residence Other

Name:
Number/Street:
City/State/Zip Code:

B. DISABILITY INCOME: Proposed Insured: ✓ Residence Employer Other (If other, indicate name and address below)

Name:
Number/Street:
City/State/Zip Code:

A12. INSURED'S OCCUPATION TITLE: STOCKBROKER

DUTIES: OPTION TRADING, BUYING & SELLING EQUITY PROD.

A13. How long employed in current job? Years____ Months 6

A14. Have you been actively at work daily on a full-time basis for the past 3 months? If no, explain. (Disregard vacation days, normal non-working days and absences that total less than 7 days.) ✓ Yes No

A15. Select One: ✓ Smoker Rate Non-smoker Rate Juvenile (0-15) Rate

**COMPLETE FOR ALL INSURANCE:** *Write additional instructions and details of yes answers in space provided below.*

| Question | Yes | No |
|---|---|---|
| A16. Do you plan to change your occupation? | | ✓ |
| A17. Do you plan any foreign residence or travel? If yes, submit supplement (F257). | | ✓ |
| A18. In the past three years have you taken part in any avocation such as motor vehicle racing, parachute jumping, hang gliding, skin or scuba diving? Is such activity planned? If yes, submit Avocation Supplement. (F1093) | | ✓ |
| A19. Within the past 3 years, have you flown as a pilot or crew member? If yes, submit Aviation Supplement. (F1093) | | ✓ |
| A20. Do you plan to replace or change any life, or disability income now in force on your life? If yes, submit required documents. | | ✓ |
| A21. Do you plan to pay for this policy by a policy loan on an existing policy? | | ✓ |
| A22. Has any insurance contract on your life terminated in the last six months? | | ✓ |
| A23. Is any application for (life) disability, accident or health insurance pending or is the reinstatement of any policy pending? | ✓ | |
| A24a. In the past three years have you been in a motor vehicle accident, or charged with a "moving" violation of any motor vehicle law or has your driver's license ever been suspended? | | ✓ |

b. State: MI Operator's license number: [redacted] 7744

Details here:
A23. $250,000 TERM POLICY PENDING WITH FEDERAL KEMPER

A25. PROPOSED INSURED'S PHONE NUMBER FOR PERSONAL HISTORY INTERVIEW CALL:
✓ Home : (313) 645-0605 Preferred Time: 6-9 A.M. ✓ P.M.
Business: ( ) ______ Ext: ____ Preferred Time: ____ A.M. P.M.

A26. ADDITIONAL INSTRUCTIONS FOR PHI CALL:

F15A-86a

# WORKSHEET I FOR DISABILITY INCOME

C1. ADJUSTABLE BENEFIT (AB)
Step Premium: YES NO

| AMOUNT | WAIT | BENEFIT PERIOD |
|---|---|---|
| $______ | ______ | ______ |

| RIDERS | PARTIAL | SHORT TERM A | SHORT TERM B | EXTENDED TERM |
|---|---|---|---|---|
| AMOUNT | | | | |
| WAIT | | | | |
| BENEFIT PERIOD | | | | |

Lifetime Accident and Sickness
Cost of Living ______%
Own Occupation

C2. ✓ LEVEL BENEFIT (NC)
Step Premium: YES ✓ NO

| AMOUNT | WAIT | BENEFIT PERIOD |
|---|---|---|
| $5,400 | 180 | 65/65 |

| RIDERS | ✓ PARTIAL | SOCIAL SECURITY | ✓ SHORT TERM A | SHORT TERM B | EXTENDED TERM |
|---|---|---|---|---|---|
| AMOUNT | | | 5400 | | |
| WAIT | | | 60 | | |
| BENEFIT PERIOD | | | | | |

Lifetime Accident and Sickness
Cost of Living ______%
✓ Own Occupation
Future Insurability Option 1 $______
Future Insurability Option 2 $______

C3. GUARANTEED CONTINUABLE (GC)

| | SECTION 1A | SECTION 1B | SECTION 2 |
|---|---|---|---|
| AMOUNT | | | |
| WAIT | | | |
| BENEFIT PERIOD | | | |

RIDERS:
Extended Benefit
*(Select one)*
1 Year 4 Year
Cost of Living ______%
Future Insurability Option 1 $______

C4. BUSINESS OVERHEAD EXPENSE (BOE)

| AMOUNT | |
|---|---|
| WAIT | |
| BENEFIT PERIOD | |

RIDERS:
FUTURE INSURABILITY OPTION 2 $______

C5. Complete the following for Business Overhead Expense Plan: List the current average monthly expenses. In the event of joint occupancy or joint ownership, list only the expenses for which the proposed insured is liable.

Rent $______
Mortgage Interest Payment $______
Utilities (gas, light, water) $______
Taxes on real property $______
Cost of leasing equipment $______
Malpractice, property and liability insurance $______
Dues for professional societies $______
Business subscriptions $______
Telephone $______
Employees' Salaries $______
Accountant Fees $______
Depreciation $______
Maintenance service $______
Other: ______ $______
______ $______

TOTAL MONTHLY EXPENSES: $______

F15C-86a

## WORKSHEET II FOR DISABILITY INCOME

C6. PREMIUM BILLING: *(Select one)*

DIRECT BILLING
- Annual
- Semi-Annual
- ✓ Quarterly
- Monthly Check Service

FRANCHISE BILLING
- New Franchise Number
  *(Submit billing form F874 for new franchise)*
- Add to Existing Franchise
  #__________
  *(Number)*

C7. IS PROPOSED INSURED ELIGIBLE FOR:
- A. Social Security ✓ Yes No
- B. Worker's Compensation ✓ Yes No
- C. State Cash Sickness Benefit Yes ✓ No

C8. AUTOMATIC PREMIUM DIVIDEND:
✓ Yes No

C9. ANY DEPENDENT CHILDREN:
✓ Yes No

C10. DIVIDENDS: *(Select one)*
- Accumulations
- ✓ Applied
- Cash

C11. PREMIUM TO BE PAID BY:
Employer ✓ Insured

C12. WILL EMPLOYER CONTINUE YOUR SALARY OR INCOME IF DISABLED: Yes No
If Yes, $________Amount for ______Month(s)

| C13. EARNED INCOME | Amount | C14. UNEARNED INCOME | Amount |
|---|---|---|---|
| a. Salary, Fees, Commissions & Bonus | 300,000 | Dividends and Interest | — |
| b. Pension and Profit Sharing Contributions | | Net Capital Gains | — |
| c. Earnings from Other Occupations *(describe)* | — | Rental Income (after expenses, before depreciation) | — |
| d. Total Earnings (a + b + c) | 300,000 | Other *(describe)* | |
| e. Deductible Business Expenses | — | | |
| f. Total Net Earned Income (d - e) | 300,000 | Total Unearned Income | |

C15. TOTAL NET WORTH IF ONE MILLION DOLLARS OR MORE: *(assets minus liabilities)* $________

C16. ANY EXISTING COVERAGE TO BE DISCONTINUED UPON THIS ISSUE? Yes ✓ No

IF YES:
- Company ________
- Amount Per Month ________
- Date Discontinued ________

C17. DISABILITY INCOME IN FORCE: *(Include name of group carrier)*

| COMPANY | YEAR ISSUED | MONTHLY AMOUNT | BENEFIT PERIOD | WAIT | EMPLOYER PAY? YES | EMPLOYER PAY? NO |
|---|---|---|---|---|---|---|
| GR. DISABILITY | 1987 | 10,000 | 65 | 180 | ✓ | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Additional information, include details of "Yes" answers:

F15C-86a

088099

**NONMEDICAL**

*(Consult Underwriting Guide to New Business F707)*

D1. NAME AND ADDRESS OF PERSONAL PHYSICIAN (IF NONE, SO STATE):

Name:

Number/Street:

City/State/Zip Code:

D2. INSURED HEIGHT/WEIGHT:

__ft. __in. ____lbs.

D3. DATE AND REASON LAST CONSULTED: ____________________

D4. DIAGNOSIS AND TREATMENT (INCLUDE TYPE OF TREATMENT, MEDICATIONS, LENGTH OF HOSPITAL STAY): ____________________

D5. A. HAVE YOU EVER BEEN TREATED FOR OR HAD ANY KNOWN INDICATION OF: *(If yes, circle specific condition(s) and give details below)* Yes No

| | | |
|---|---|---|
| Chest Pain | Pneumonia | Immune Disorder |
| High Blood Pressure | Emphysema | Hepatitis |
| Heart Attack | Arthritis | Intestinal Disorder |
| Stroke | Lymph Node Disorder | Venereal Disease |
| Diabetes | Seizure | Depression |
| Tumor | Paralysis | Emotional Disorder |
| Cancer | Blood Disorder | Physical Impairment |

B. HAVE YOU EVER BEEN TREATED FOR OR HAD ANY KNOWN INDICATION OF ANY DISORDER OF: *(If yes, circle specific condition(s) and give details below)* Yes No

| | | |
|---|---|---|
| Skin | Joints | Blood Vessels |
| Neck | Eyes | Liver |
| Back | Ears | Kidney |
| Spine | Heart | Urinary Tract |
| Bones | Lungs | |

| | Yes | No |
|---|---|---|
| D6. Other than above, within the past 5 years have you had any illness, infection, injury or surgery, physical examination, electrocardiogram, X-Ray or laboratory study, or been a patient in a hospital or other medical facility? | | |
| D7. Have you smoked cigarettes at any time in the past 12 months? | | |
| D8. Have you ever requested or received a pension, benefits or payment because of injury, sickness or disability? | | |
| D9. Have you ever used cocaine or been advised to restrict the use of alcohol or drugs? | | |

D10. DETAILS: *Include diagnoses, dates, duration, names and addresses of all attending physicians and medical facilities.* ____________________

F15D-86a

**AUTHORIZATION PAGE**

*(Complete for all Plans)*

I have applied for the following: *(Check appropriate box or boxes)*

✓ Life Insurance
Disability Income

This Application includes any amendments. No agent may change the terms of this Application or any policy issued by the Company, and no agent may waive any of the Company's rights or requirements.

If a premium is paid with this Application, the Company's liability is stated in a Conditional Advance Premium Receipt. The applicant acknowledges receiving a copy of the receipt. The receipt must have the same number and date as this application. The amount paid must be shown below, otherwise, the Company has no liability under the receipt.

If the Company is not liable under a Conditional Advance Premium Receipt, I agree that any policy(ies) issued on this application shall take effect only if the first full premium is paid and such policy(ies) is issued and delivered to the owner; and all answers and statements in this application are true and complete to the best of my knowledge and belief as if made at the time of delivery. This paragraph shall be subject to the incontestability provision of any policy(ies) issued because of this application.

I have received a Notice of Insurance Information Practices. Under penalties of perjury, I certify that my correct Social Security number is shown and that I am not subject to back up withholding.

Prepayment: Life Insurance Amount $ -0-
Disability Income Amount $

Signed at Birmingham Michigan on 5-18-88
City and State Date

Licensed Agent/Witness

Signature of Proposed Insured

The applicant agrees to be fully bound by all statements, answers and agreements contained in this Application.

The applicant certifies under penalties of perjury that its correct Tax Identification number (or Social Security number) is shown and that it is not subject to back up withholding.

Signed at Birmingham, Michigan on 5-18-88
City and State Date

Licensed Agent/Witness

Signature of Applicant

AUTHORIZATION TO RELEASE INFORMATION

Connecticut Mutual Life Insurance Company
C.M. Life Insurance Company
140 Garden Street
Hartford, Connecticut 06154

I authorize any of the following: physician, health professional, hospital, clinic, other medically related facility, insurance company, reinsuring company, MIB Inc., consumer reporting agency, or employer that has any record or knowledge of me, or of my health to give to Connecticut Mutual Life, or C.M. Life, or their reinsurers all such information. I permit them to give to MIB Inc. a brief report of this information.

1. This information will be used to determine eligibility for life or disability insurance.
2. All medical information may be released. This includes: medical history, mental or physical condition, diagnosis, prognosis, and treatment.
3. This release shall be valid for thirty (30) months from its date. It applies to my minor child if he or she is a proposed insured.

A copy of this is as valid as the original. I have the right to receive a copy.

WITNESS

Print Name of Proposed Insured TERRY D. [illegible]

DATE 5-18-88

Signature of Proposed Insured

F15E-86a

088099

**BENEFICIARY/OWNER FORM**
**Side I: Beneficiary**

IMPORTANT: COMPLETE BOTH SIDES. BE SURE SIGNATURES ARE INCLUDED ON REVERSE SIDE.

Instructions:
1. SELECT Beneficiary Designation.
2. PRINT Beneficiary name(s) and relationships(s).
3. COMPLETE Primary Beneficiary address.
4. CONTINUE on reverse side.

**Beneficiary Designations:**

A. INSURED'S ESTATE
The Executors or Administrators of the Insured.

B. ONE BENEFICIARY
______ of the Insured.
*(Name, Relationship)*

C. ONE BENEFICIARY — ONE SECOND BENEFICIARY
______ of the Insured, if such beneficiary survives the Insured, otherwise to
*(Name, Relationship)*
______ of the Insured.
*(Name, Relationship)*

D. ONE BENEFICIARY — TWO OR MORE SECOND BENEFICIARIES
______ of the Insured if such beneficiary survives the Insured, otherwise in
*(Name, Relationship)*
equal shares to such of ______ of the Insured, as may survive the Insured.
*(Name, Relationship)*

E. ONE BENEFICIARY — UNNAMED CHILDREN OF INSURED AS SECOND BENEFICIARIES
______ of the Insured, if such beneficiary survives the Insured, otherwise in
*(Name, Relationship)*
equal shares to the surviving children of the Insured.

F. ONE BENEFICIARY (SPOUSE) — UNNAMED CHILDREN BORN OF THE MARRIAGE AS SECOND BENEFICIARIES
______ of the Insured, if such beneficiary survives the Insured, otherwise
*(Name, Relationship)*
in equal shares to the surviving children born of the marriage of the Insured and said spouse.

G. TWO OR MORE BENEFICIARIES
In equal shares to such of ______
*(Names, Relationships)*
______ of the Insured, as may survive the Insured.
*(Names, Relationships)*
If a class is named as a beneficiary, please indicate name of each member.

H. TWO OR MORE BENEFICIARIES — ONE SECOND BENEFICIARY
In equal shares to such ______
*(Names, Relationships)*
______ of the Insured, as may survive the Insured, or if no such beneficiary
*(Names, Relationships)*
survives the Insured, to ______ of the Insured.
*(Name, Relationship)*

I. CORPORATION
______
*(Name, City/State)*
its successors or assigns.

J. OTHER (Use this space for Beneficiary designations which do not fall within the above categories. Indicate all names, relationships, and special instructions. If a Class is named, please indicate present members.)

______
______
______

If the beneficiary designated under the policy issued from this application does not survive the Insured, the beneficiary shall be the owner or the executors or administrators of the owner. The interest of any beneficiary shall be subject to any assignment of the policy which is binding upon the company and to any optional settlement agreement which may be in effect at the insured's death.

F3064A

**TURN OVER TO COMPLETE**

Fill in the address of each beneficiary named.

(Street) ______________________

(City) ______________________ (State) __________ (Zip) __________

Additional Names/Addresses:

______________________

______________________

______________________

K. IF SPLIT DOLLAR:

| | | | | |
|---|---|---|---|---|
| Method: | Endorsement | OR | Collateral Assignment | |
| Premium Split: | Standard | Uniform | ☐ Pay-All | Offset |
| Benefit: | Traditional | OR | Equity | |

**Side II: Owner**

Instructions:
1. SELECT Owner designation
2. PRINT Owner name(s) and relationship(s)
3. SIGNATURES of proposed Insured and Applicant are required

**OWNER DESIGNATIONS:**

A. X THE INSURED

B. ONE OWNER — REVERSION TO INSURED:

______________________ of the Insured, if living, otherwise the Insured.
*(Name, Relationship)*

C. ONE OWNER — ESTATE OF OWNER:

______________________ of the Insured, or to the Executors or Administrators of the Owner's
*(Name, Relationship)*
estate.

D. CORPORATE OWNER:

______________________, its successors or assigns.
*(Name, City and State)*

E. OTHER (Use this space for Owner designations which do not fall within the above categories. Indicate all names, relationships, and special instructions.)

______________________

______________________

______________________

Signed at Birmingham Michigan on 5-18-88
*(City and State)* *(Date)*

______________________ *(Signature of Applicant)*

______________________ *(Signature of Proposed Insured)*

Sharon L Evans
*(Witness)*

F3064A

DUPLICATE COPY

# Connecticut Mutual Life Insurance Company

**Hartford, Connecticut • Since 1846**

Insured TERRY D ALTMAN 4771170 Policy Number

We at Connecticut Mutual Life believe you should read your policy. We've written it in plain English so you'll understand its terms. We will, subject to these terms, pay the benefits to you if you become disabled after the effective date. This policy is a legal contract between the Policyowner and the Insurer.

READ YOUR POLICY CAREFULLY

**Benefits This Policy Provides**

- Income during total or residual disability
- Rehabilitation benefit
- Premium waived during disability
- Dividends
- Conditional right to continue the policy to age 75

Your policy is issued in consideration of your application and premium payments. A copy of your application is attached and made a part of this policy.

We provide benefits for a loss arising from a sickness or disease that first appears (makes itself known) on or after the effective date and while this policy is in force. We also provide benefits for a loss resulting from an accidental bodily injury that happens on or after the effective date.

**Renewal Provision.** We won't cancel this policy. Nor will we increase the premiums from those shown on the Coverage Page. As long as you pay premiums on time, we'll continue coverage until the Anniversary on or following your 65th birthday. You have the conditional right to continue this policy to age 75. This is fully explained in the Conditions For Continuing The Policy To Age 75 provision.

**Policy Index**

PART 1 Definitions
PART 2 Disability benefits
PART 3 Premiums
PART 4 Claims
PART 5 Other benefits
PART 6 When you're not covered
PART 7 General rules

**Ten Day Right To Examine Policy.** If for any reason you decide not to keep this policy, send it to us within 10 days after receiving it. Send it to our Home Office or to the agent who sold it to you. We'll treat the policy as though it never had been issued. We'll refund any premium paid.

This policy is issued by Connecticut Mutual Life Insurance Company at our Home Office, 140 Garden Street, Hartford, Connecticut 06154 on the effective date.

DUPLICATE COPY DUPLICATE COPY

Countersigned by ____________________ Licensed Resident Agent

DISABILITY INCOME POLICY

Noncancellable—Rates guaranteed
Guaranteed continuable to age 65
Conditionally continuable to age 75—
Subject to premium change
Participating in dividends

NC-84

Exhibit 2

## PART 1—DEFINITIONS

*In PART 1, we define several terms used in this policy.*

**Effective Date:** The date that the policy is "in effect." Coverage starts on that date. An Anniversary falls each year on the same month and day as the effective date.

**Waiting Period:** The number of days immediately following the start of your disability. No benefits are provided during the waiting period. Your waiting period is shown on the Coverage Page.

**Maximum Benefit Period:** The maximum length of time we'll pay benefits, whether for total disability, residual disability or a combination of both.

**Sickness:** "A sickness or disease that first appears (makes itself known) on or after the effective date. It includes disability from transplant surgery and complications of pregnancy. It also includes disability from normal pregnancy or normal childbirth after you have been totally disabled for 90 days."

**Injury:** An accidental bodily injury that happens on or after the effective date.

**Occupation:** Your regular occupation at the start of disability.

**Doctor:** A licensed medical practitioner other than the insured.

**Income:** Gross earnings from any job or business. This doesn't include:

- Investment income.
- Rent.
- Royalties.
- Any amount which is deductible from gross income as a business expense for income tax purposes.

**Predisability Income:** Average monthly income for the last 12 months before the start of disability. Or the average for the last 24 months, if greater.

**Current Income:** Income for the month that a benefit is claimed.

**Loss Of Income:** Your predisability income minus your current income.

**Proof Of Insurability:** Proof you give us, or that we might obtain, that you're an acceptable risk.

**Assignment:** Legal transfer of one's interest to another party.

**Pre-existing Condition:** Pre-existing condition means the existence of symptoms which would cause an ordinarily prudent person to seek diagnosis, care or treatment within a 5 year period preceding the effective date of coverage of the insured person or a condition for which medical advice or treatment was recommended by a physician or received from a physician within a 5 year period preceding the effective date of the coverage of the insured person.

**Partial Disability:** You're partially disabled if because of sickness or injury:

- You can do some, but not all, of the main duties of your occupation.

OR

- You can work at your occupation no more than ¼ the hours you worked before becoming disabled.

In either case you must be under a doctor's care.

## PART 2—DISABILITY BENEFITS

*In PART 2, we discuss the different kinds of disability covered and the benefits provided for each. We'll pay only one benefit at a time.*

### The Kinds Of Disability Covered

**Total Disability.** You're totally disabled if because of sickness or injury you can't do the main duties of your occupation. You must be under a doctor's care.

**Residual Disability.** You're residually disabled if because of sickness or injury:

- you can do some, but not all, of the main duties of your occupation.

OR

- you can work at your occupation no more than ¾ of the hours you worked before becoming disabled.

In either case, you must be earning an income and have lost at least ¼ of your predisability income for each month you make a claim for residual disability. Also you must be under a doctor's care. If you are residually disabled you are also considered partially disabled.

Your residual disability benefit may be extended even after you are back to work full-time, if you continue to have an income loss. Through the sixth complete calendar month following your full recovery from a period of total and/or residual disability lasting one year or longer, you will continue to be considered residually disabled if you have lost at least ¼ of your predisability income. During this period we will waive the requirements that:

- you can do some, but not all, of the main duties of your occupation.

OR

- you can work at your occupation no more than ¾ the hours you worked before becoming disabled.

**Recurring Disability.** This is a related disability that starts less than 6 months after a period of total or partial disability. We will treat the recurring disability as a continuation of the prior one. If the waiting period has already been satisfied, no new waiting period is required. If the waiting period has not been satisfied, periods of recurring disability may be accumulated to satisfy the waiting period.

*(Example: Bob's policy has a one-month waiting period for total disability. He has a stomach ulcer attack and is totally disabled for more than one month. Two months after returning to work, Bob has a second stomach ulcer attack and is totally disabled again for 2 months. The second attack is treated as a continuation of the first. So, Bob will start to receive total disability benefits without another waiting period. Bob has now also satisfied 3 months toward the waiting period for residual disability.)*

### The Benefits Provided For Disability

**Total Disability Benefit.** You must be totally disabled and have been totally and/or partially disabled for the full waiting period. We'll pay the first monthly benefit one month after the waiting period ends. You'll get benefits as long as you're totally disabled. But we'll pay only up to the maximum benefit period. You won't get a larger benefit if you're disabled due to more than one cause.

Each monthly payment made during the first 12 months of total disability will equal your basic monthly benefit shown on the Coverage Page.

Afterwards your benefit will be based on your loss of income. Your monthly benefit payment will equal your basic monthly benefit multiplied by the ratio of your loss of income to your predisability income. Your loss of income is your predisability income minus your current income. If you have no current income or if your current income is less than 25% of your predisability income, your monthly benefit payment will equal your basic monthly benefit.

COVERAGE PAGE

INSURED TERRY D ALTMAN 4771170 POLICY NUMBER

DISABILITY INCOME POLICY

DATE OF ISSUE JUN 10, 1988
DATE OF REISSUE AUG 09, 1988

AGE 35

| EFFECTIVE DATE | COVERAGE | MONTHLY BENEFIT | WAITING PERIOD | MAXIMUM* BENEFIT PERIOD | ANNUAL PREMIUM | PAYABLE TO YEAR |
|---|---|---|---|---|---|---|
| AUG 9 1988 | BASIC MONTHLY BENEFIT | $5,400 | 180 DAYS | TO 65 | $1,380.40 | 2018 |
| | ADDITIONAL BENEFITS – SEE ATTACHED RIDERS FOR DETAILS | | | | | |
| AUG 9 1988 | SHORT TERM RIDER | $5,400 | 60 DAYS | 4 MOS | $388.80 | 2018 |
| AUG 9 1988 | OWN OCCUPATION/ PRESUMPTIVE DIS RIDER | $5,400 | | | $247.32 | 2018 |

YOUR MAXIMUM MONTHLY BENEFIT IS $5,400

TOTAL ANNUAL PREMIUM $2,016.52

QUARTERLY PREMIUM $534.28

*YOUR BENEFIT PERIOD FOR DISABILITY IS YOUR SPECIFIED BENEFIT PERIOD, BUT NOT BEYOND AUG 9 2019. HOWEVER, THE BENEFIT PERIOD FOR YOUR MONTHLY BENEFIT WILL BE AT LEAST 24 MONTHS.

YOUR PREMIUM IS BASED ON SMOKER RATES.

*(Example: You are disabled at age 45. Your current income is $1,500 from a new occupation. Your predisability income is $3,000. Your loss of income is $1,500 ($3,000 – $1,500). The ratio of loss of income to predisability income is $\frac{\$1,500}{\$3,000}$ or ½. Each monthly payment made during the first 12 months of disability will equal your basic monthly benefit. Afterwards, your monthly benefit payment will be ½ of your basic monthly benefit.)*

**Residual Disability Benefit.** You must be residually disabled and have been totally and/or partially disabled for 12 months, or the full waiting period if longer. We'll pay the first monthly benefit one month later. Payments will continue for as long as you're residually disabled. But, we'll only pay up to the maximum benefit period. We won't pay beyond the anniversary following your 65th birthday. The benefit is based on your loss of income as described in the "Total Disability Benefit" section. Except, your monthly benefit payment will equal your basic monthly benefit if your current income is less than 25% of your predisability income.

*(Example: You were disabled at age 35. Your current income is $1,000 from your occupation. Your predisability income was $3,000. Your loss of income is $2,000 ($3,000 – $1,000). The ratio of loss of income to predisability income is $\frac{\$2,000}{\$3,000}$ or ⅔. Your monthly residual disability benefit payment will be ⅔rds of your basic monthly benefit.)*

**Special Disability Benefits**

**Rehabilitation Program Benefit.** During any period in which you are receiving total or residual disability benefits, we'll also reimburse your expenses for taking part in a rehabilitation program we approve. We'll reimburse your expenses up to a maximum amount of 24 times your policy's maximum monthly benefit. This reimbursement will be in addition to your monthly disability benefit. We'll judge whether your continued participation would be worthwhile.

A rehabilitation program means:

- A recognized program operated by the Federal or State government.
- A formal program of rehabilitation at a licensed vocational school, business school or accredited college.
- Any other planned program.

Reimbursement for your expenses is subject to our approval.

Expenses mean the cost of tuition, books and equipment that you actually pay for and that are required for the program.

**Adjustment To Predisability Income.** The amount of predisability income will be adjusted after 12 consecutive months of disability. For each benefit year afterward that predisability income is used to determine your monthly benefit, we'll increase the predisability income figure used for the preceding year. We'll increase it by the same percentage that the Consumer Price Index rose during the preceding calendar year, or the percentage that your income rose during the same period, whichever is less. Except that the percentage will never be less than 5%. The CPI used will be the one used in adjusting Social Security Benefits. We'll ignore decreases in the CPI.

*(Example: Ben's basic monthly benefit is $2,200. He's been disabled for 12 consecutive months. His predisability income was $4,000. Last year the CPI rose 6%. We now consider his predisability income to be $4,240. His current income is $1,500. His loss of income is $2,740 ($4,240 – $1,500).*

*Ben's monthly benefit is $2,200 × $\frac{\$2,740}{\$4,240}$ or $1,422.*

*Important: We did not increase Ben's monthly benefit by 6%. We increased his predisability income figure by 6%. If Ben has no current income, the predisability income won't be used to determine benefits. In this case there will be no adjustment.)*

By increasing the predisability income, you may qualify for a larger disability benefit (up to the amount of your basic monthly benefit.) Once adjusted we will never let your predisability income decrease during that period of disability.

**PART 3—PREMIUMS**

*The annual premium is shown on the Coverage Page. In PART 3 we tell how, when and where to pay premiums.*

**Premium Payments.** Premiums are due in advance. The first is due on the effective date. Premiums after the first are due on the same day of the month as the effective date. Premiums may be paid annually. Or they may be paid more frequently as we allow. They must be paid to our Home Office or to one of our authorized agents.

**Grace Period.** Each premium after the first must be paid within 31 days after its due date. This 31 day period is called the "grace period." The policy will stay in effect during the grace period.

**Changing When You Pay.** You may request a change in the frequency of your payments on any Anniversary. This request must be in writing. Any change is subject to our approval.

**Refund After Death.** We'll refund any premium that was paid for coverage after the policy month in which you die. Our Home Office must first receive written notice of your death.

**PART 4—CLAIMS**

*There are certain things you must do when making a claim. In PART 4, we discuss these requirements. We also discuss payment of claims.*

**How To Make A Claim**

**Notice Of Disability.** Send a written notice of your disability to our Home Office or to one of our authorized agents. Send it within 20 days after the start of disability or as soon as reasonably possible. There's no required form.

**Claim Forms.** We'll then send you a claim form. If you don't receive one within 15 days after you sent notice, write us your own claim letter. Tell us what caused the disability. Describe your situation.

**Required Proof.** Whether on our claim form or your claim letter, send proof of your disability and any proof of reduced income that may be required. Send it to our Home Office as soon as possible. Required proof must also be received within 90 days of each monthly benefit payment claimed. If it's not possible to send it within 90 days, send it as soon as reasonably possible. Your claim won't be reduced because of the delay. But we won't accept proof of loss later than 1 year after it was due. We'll make an exception if you weren't then competent to make the claim.

We may require from time to time that you be examined by doctors we choose. We'll pay the cost. We may also require from time to time, satisfactory proof of your income before and during the disability. This may include, but is not limited to, copies of your W-2 form and/or income tax returns.

**Payment Of Claims**

**When Benefits Are Paid.** We'll pay benefits monthly.

**Whom We'll Pay.** We'll pay benefits to you. If you're a minor or not competent to give a release, we may pay up to $1,000 to any relative of yours who we believe is entitled.

If you die, we'll pay your estate all amounts due prior to your death. But we may pay up to $1,000 to any relative of yours who we believe is entitled.

Any payment we make in good faith will fully discharge us for that payment.

**Part Payments.** Let us know as soon as you've recovered. If you recover during a month, we'll send you a pro-rata payment for the part of the month you were disabled.

**PART 5—OTHER BENEFITS**

*In PART 5, we discuss other benefits we provide.*

**Waiver Of Premiums.** We'll waive all premiums that come due after you've been totally and/or partially disabled for 90 days from the same sickness or injury. You won't have to pay

premiums that come due while you remain disabled. We won't waive premiums beyond the maximum benefit period. We'll refund any premium paid for a period up to 90 days before you qualify for this benefit.

We'll waive premiums for this policy and any attached riders.

We'll waive premiums on the payment mode in effect when you become disabled.

**Dividends.** Each year we determine how much can be paid as dividends on our policies. We call this "the divisible surplus." Then we figure how much of the divisible surplus can be paid as a dividend on all policies like yours.

We'll pay any dividends on the Anniversaries. We don't expect that there will be any before the second Anniversary.

We pay dividends in cash. But if you ask, we'll apply them toward premiums. Or, we'll accumulate them for you. We'll accumulate dividends at an interest rate of not less than 3% a year. We won't credit interest for any part of a year.

**Payment Of Premiums By Accumulated Dividends.** If you request it in the application, or in writing while this policy is premium paying, we'll automatically use accumulated dividends, if sufficient, to pay any premium in default. This also applies to the premium for any benefit rider attached to this policy.

**Reinstating The Policy.** The policy will end if premiums are not paid when due or within the grace period.

If we don't require an application and evidence of your good health, you may reinstate the policy (restore coverage) by paying the back premiums. Pay us or one of our authorized agents. The reinstatement date will be the date you pay the back premiums.

If we do require an application, you'll have to pay back premiums and provide evidence of your good health. Then the reinstatement date will be the date that we approve your application. If you aren't notified of either approval or disapproval, the policy will be reinstated 45 days after the date of your application.

The reinstated policy will cover injuries that occur after the reinstatement date. It will cover a sickness that first appears (makes itself known) more than 10 days after the reinstatement date.

After reinstatement, the terms of the policy and attached riders will be the same as before termination. Except for terms added in connection with reinstatement.

**Conditions For Continuing The Policy To Age 75.** This policy ends on the Anniversary on or following your 65th birthday. But you may continue it each year until the Anniversary on or following your 75th birthday. This is provided you stay actively and gainfully employed full time, at least 30 hours a week.

You must tell us within 30 days before or after each Anniversary on or after your 65th birthday if you want to continue your policy. We may ask for proof that you're employed.

If this policy is continued past age 65 we will not allow a waiting period longer than 180 days. The maximum benefit period will be 24 months. We'll base the annual premium on your age and occupation then. Rates will be those we're using at the time.

If your active and gainful employment stops after we've continued your policy, coverage will end on the date you stop working. We'll refund any premiums paid for coverage after that date.

## PART 6—WHEN YOU'RE NOT COVERED

*There are certain disabilities we don't cover. And there are times when we may suspend coverage. We discuss this in PART 6.*

**Disabilities Not Covered.** We don't cover disability caused or contributed to by:

- war (declared or not).
- normal pregnancy, except described in the definition of "Sickness."
- normal childbirth, except described in the definition of "Sickness."

**Suspended Coverage While In Military.** This policy will be suspended if and when you enter active military service. This applies to the military service of any country or international authority. This doesn't apply to active duty for training that lasts 90 days or less.

We'll refund that part of any premium paid for the suspended period.

If you're released from active duty within 5 years from the date you entered active military service, you may restore this policy. Make written application and pay the required premium within 90 days of your release from active duty. No proof of insurability is needed. Premiums will be at the same rates as if the policy hadn't been suspended.

The restored policy will cover only injuries that occur after the restoration date. Or sickness that first appears (makes itself known) more than 10 days after the restoration date.

The terms of the restored policy and riders will be the same as before suspension.

**Pre-existing Conditions Limitations.** A disability or loss caused by a pre-existing condition will be covered if the disability or loss commences 2 years after the effective date unless excluded by name or disease as provided in the contestable clause.

## PART 7—GENERAL RULES

*PART 7 contains general rules that apply.*

**The Owner.** You (the insured) are the owner of this policy.

**The Entire Contract.** The entire contract consists of: The policy. The application. Any attached riders, endorsements and other papers.

**Changes.** Any change must be approved by an officer of our company. You must sign any change that restricts your policy. The change must be attached to the policy. Our agents cannot make changes or waive any provision. We may charge for making a change.

**Assignments Or Transfers.** The benefits of this policy may be assigned. Any interest may be transferred. Our Home Office must receive written notice of the terms of the assignment or a copy of the assignment. If not, we won't take notice of the change. In any case, we won't be responsible for the validity of any assignment.

**Contesting Your Policy.** We may not contest this policy after it has been in force for 2 years during your lifetime. This excludes any period of disability related to a misrepresentation in your application. We won't use any misstatements in your application to deny a claim for benefits if your disability begins after a like 2 year period.

We won't deny a claim for disability which starts after 2 years from the date of issue because a disease or physical condition existed before coverage began; unless excluded from coverage by name or specific description.

We won't contest your policy or deny a claim for a disability caused by a disease or physical condition which you fully and accurately described in your application for coverage; unless the condition was excluded from coverage by name or specific description.

**Legal Actions.** You agree not to start a legal action to recover on this policy for 60 days after you've sent proof of your loss to us. No action may be brought later than 3 years after proof is required. We discuss required proof when making a claim in PART 4.

**Misstating Your Age.** You may have misstated your age in your application. If so, we'll change the benefit amounts. The change will be what your premiums would have bought if you had given your correct age.

But we'll only be required to make a refund if at your correct age we wouldn't have issued the policy at all. Or if at your correct age, coverage would have ended before we accepted the premium. The refund will only cover premiums you paid for coverage you won't receive. We'll deduct any amounts we've paid you.

**State Laws.** Any provision that, on the effective date, conflicts with state laws, where you reside, is changed to meet the minimum requirements of those laws.

## SHORT TERM BENEFITS RIDER

This rider provides monthly total disability benefits for a short period. We discuss disability benefits in PART 2 of your policy. All definitions in your policy apply to this rider.

**Premiums.** This rider made a part of your policy in consideration of your application and premium payments. A copy of your application is attached to and made a part of your policy. The annual premium and the effective date for this rider are shown on the Coverage Page of your policy. If you applied for this rider after the policy's effective date, we'll send you a new Coverage Page. Premiums for this rider must be paid along with the premiums for your policy. If you keep your policy in effect after this rider ends, you'll no longer pay the premium for this rider.

**When We'll Pay Benefits.** The monthly benefit under this rider is for total disability only. After you've been totally and/or partially disabled for the full rider waiting period shown on the current Coverage Page, we'll pay the benefit. The first benefit will be payable 1 month after the waiting period ends. During the first 12 months of total disability, we'll pay benefits as long as you're totally disabled. After the 12 months, we'll pay benefits only if you're totally disabled and have no current income from any occupation. We'll pay only up to the maximum benefit period.

**Monthly Benefit.** The amount of your monthly benefit is shown on the current Coverage Page.

**Dividends.** Each year we determine how much we can pay as dividends. We discuss how dividends are paid in the OTHER BENEFITS section of your policy. We use the same procedure to figure the dividends we'll pay on all riders like yours.

**Contesting Your Rider.** We may not contest this rider after it has been in force 2 years during your lifetime. This excludes any period of disability related to a misrepresentation in your application. We won't use any misstatements in your application to deny a claim for benefits if your disability begins after a like 2 year period.

We won't deny a claim for disability which starts after 2 years from the date of issue because a disease or physical condition existed before coverage began; unless excluded from coverage by name or specific description.

We won't contest your rider or deny a claim for a disability caused by a disease or physical condition which you fully and accurately described in your application for coverage; unless the condition was excluded from coverage by name or specific description.

**Misstating Your Age.** You may have misstated your age in your application. If so, we'll change the benefit amounts. The change will be what your premiums would have bought if you had given your correct age.

**Termination.** This rider will end on the earliest of the following dates:

- 31 days after the due date of any unpaid premium.
- as of the next premium due date upon your written request.
- the Anniversary on or after your 65th birthday.
- the date that your policy ends.

CONNECTICUT MUTUAL LIFE INSURANCE COMPANY

DUPLICATE COPY

# OWN OCCUPATION/PRESUMPTIVE TOTAL DISABILITY RIDER

This rider modifies your policy and certain riders that may be in force. The modifications are described below. All definitions in your policy apply to this rider. Payment under this rider will also be in lieu of any other Total Disability Benefit payments under your policy.

**Modifications To Part 2 Of Your Policy.**

The following provision is added to Part 2— "Disability Benefits" of your policy.

**Presumptive Total Disability.** If sickness or injury results in the total loss of sight, speech or hearing or the total loss of use of both hands, both feet, or one hand and one foot, it will be considered total disability while it continues. The requirement that you must be under a doctor's care will be waived.

The "Total Disability Benefit" provision Part 2— "Disability Benefits" is deleted. The following provision is added:

**Total Disability Benefit.** You must be totally and/or partially disabled for the full waiting period. We'll pay the first monthly benefit one month after the waiting period ends. Each monthly payment will equal your basic monthly benefit shown on the current Coverage Page. You'll get benefits as long as you're totally disabled. But we'll pay only up to the maximum benefit period. You won't get a larger benefit if you're disabled due to more than one cause.

The benefits under your policy and certain riders may be based on your loss of income. Your loss of income is your predisability income minus your current income from your occupation as defined in Part 1 of your policy. This definition will apply to your policy and your Social Security Supplement Rider and your Partial Disability Benefits Rider, if those riders are in force. The loss of income definition included in your policy will apply to your other riders as if this rider were not in force.

*(Example: Your current income is $1,000; your predisability income was $3,000. Your loss of income is $2,000. The ratio of loss of income to predisability income is $\frac{\$2,000}{\$3,000}$ or ⅔. Your monthly benefit will be ⅔ of the amount shown on the coverage page.)*

**Modifications To Riders.**

Your policy may also have a Cost Of Living rider in force. If it does, your benefit for total disability will be the greater of the benefit provided under the Cost Of Living rider and this rider.

**Premiums.** This rider is made a part of your policy in consideration of your application and premium payments. A copy of your application is attached to and made a part of your policy. The annual premium and the effective date for this rider are shown on the Coverage Page of your policy. If you applied for this rider after the policy's effective date, we'll send you a new Coverage Page. Premiums for this rider must be paid along with the premiums for your policy. If you keep your policy in effect after this rider ends, you'll no longer pay the premium for this rider.

**Dividends.** Each year we determine how much we can pay as dividends. We discuss how dividends are paid in the "Other Benefits" section of your policy. We use the same procedure to figure the dividends we'll pay on all riders like yours.

**Contesting Your Rider.** We may not contest this rider after it has been in force for two years during your lifetime. This excludes any period of disability related to a misrepresentation in your application. We won't use any misstatements in your application to deny a claim for benefits if your disability begins after a like 2 year period.

We won't deny a claim for disability which starts after 2 years from the date of issue because a disease or physical condition existed before coverage began; unless excluded from coverage by name or specific description.

We won't contest your rider or deny a claim for a disability caused by a disease or physical condition which you fully and accurately described in your application for coverage, unless the condition was excluded from coverage by name or specific description.

**Misstating Your Age.** You may have misstated your age in your application. If so, we'll change the amount which we would otherwise pay under this rider. The change will be what your premiums would have bought if you had given your correct age.

**Termination.** This rider will end on the earliest of the following dates:

- 31 days after the due date of any unpaid premium.
- as of the next premium due date upon your written request.
- the Anniversary on or after your 65th birthday.
- the date that your policy ends.

CONNECTICUT MUTUAL LIFE INSURANCE COMPANY

DUPLICATE COPY

Agency No. 001

SUPPLEMENTARY APPLICATION
CONNECTICUT MUTUAL COMPANIES, Hartford, Connecticut

Check One:
☒ Connecticut Mutual Life Insurance Company
☐ C.M. Life Insurance Company
☐ CML Pension and Life Insurance Company

**IDENTIFICATION**

1A. The Name of the Insured is: (first, middle, last) TERRY D ALTMAN

B. Sex ☒M ☐F

C. You were born on: (mo, day, yr) [redacted]

D. Your birth state is: CANADA

E. Your residence state is: MICH.

F. Your Social Security Number is: [redacted] 4245

G. Policy Numbers affected by this application: 4,771,170

The following sections are to be completed only to reflect a change to the existing policy(ies) listed above. Complete only those sections applicable. Refer to published guidelines for underwriting requirements when necessary.

**TERM CONVERSION OR REWRITE**

2A. Change Plan to:

B. Change Face Amount to:

C. Change MODE to:

D. Due Date Requested* 8-9-88

E. ☐ Original Age Conversion ☐ Rewrite ☐ Attained Age Conversion

F. Are you currently disabled? ☐ Yes ☒ No

G. APL Yes ☐ No ☐ APD Yes ☐ No ☐

*NOTE: This modification to the policy(ies) may result in a change in age, in which case the premium will increase. If original application was prepaid, a temporary term premium will be charged.

This policy will be released and surrendered as of the effective date of the new policy hereby applied for. The application(s) which will be the basis of and part of the new policy will consist of (1) the application for this policy, except as modified below and (2) the separate application for any amount of insurance in excess of this policy.

The Date of Issue referred to in the Incontestability and Suicide provisions of the new policy will be the Date of Issue of this policy with the following exception. For any amount of insurance in excess of the face amount of this policy, the Date of Issue referred to in these provisions will be the Date of Issue of the new policy.

The new policy will be subject to any risk limitation and any assignment outstanding against this policy.

Unless terminated by your written request or by a change of beneficiary, any Optional Settlement Agreement outstanding in connection with this policy will apply to the new policy. We are hereby authorized to make such changes in that agreement as may be necessary to conform with the new policy.

It is agreed that this application and action by us are subject to (a) the Conversion Privilege provision of this policy and (b) the separate application made simultaneously for any amount of insurance in excess of the face amount of this policy, to be issued subject to satisfactory evidence of insurability.

**BENEFICIARY/OWNER**

3A. The Primary Beneficiary is changed to: (First Name, middle initial, surname and relationship)

Owner's initials ________

B. The Contingent Beneficiary is changed to:

Owner's initials ________

C. The Owner is changed to: (Full name and address)

Owner's initials ________

Executors or Administrators of the last living Owner shall succeed to Ownership rights unless otherwise specified or unless Owner is a Corporation, Trustee, Partnership or Association.

**DIVIDENDS**

4. Change the Dividend Option to:

☐ Additional Insurance ☐ Applied (not available with a monthly mode).
☐ Accumulate ☐ Cash

**CANCEL**

5. Cancel the following Riders:

**REMARKS**

6.

These changes constitute an amendment to the policy(ies) and the owner agrees that the amendment shall be attached to and become a part of the policy. The owner agrees to attach the amendment to the policy.

The company is authorized to make any necessary changes to the contract to conform with published company rules and limits as they apply under the policy(ies).

I agree that any rider or change applied for shall not be in force and binding until (1) the application has been approved, and (2) the first premium paid while the health of the insured(s) and all other conditions affecting insurability remain as described in this application. Amount of premium paid: $2272.92

Signed at Birmingham, MI (City and State) on 8-9-88 (Date)

[signature] Signature of Soliciting Agent

[signature] Signature of Insured

........ Signature of Witness

........ Signature of Owner, if other than the Insured

F394-83

Exhibit 3

CHANGES/RIDERS

**LIFE**

7.

| | Amount |
|---|---|
| ☐ Disability Waiver of Premium | |
| ☐ Accidental Death Benefit (Total already in force) | |
| ☐ Insurability Rider | |
| ☐ Children's Insurance Rider (Also submit Form 10G) | |
| ☐ Level Term Rider | |
| ☐ Decreasing Term Rider ..... % ..... years | |
| ☐ Spouse's Rider | |
| ☐ Paid-up Additional Insurance from Accumulated Dividends | |
| ☐ Business Plan .......... % | |
| ☐ Business Plan .......... years | |

☐ One Year Term Insurance with
- ☐ Cash Value Option; or
- ☐ Face Amount Option; with
  - ☐ Balance—Additional Insurance
  - ☐ Balance—Accumulate
  - ☐ Balance—Apply on Premium

☐ Payor Benefit Rider
- ☐ D—Death only
- ☐ DD—Death or Disability of Payor
- ☐ DDW—Death or Disability of Payor and disability of insured at age 25

☐ Flexible Premium Adjustable Life Death Benefit Option
- ☐ Option 1
- ☐ Option 2

**DISABILITY INCOME**

| | Amount | Benefit Period | Waiting Period |
|---|---|---|---|
| ☐ Insurability Rider | | | |
| ☐ Social Security Supplement Rider | | | |
| ☐ Extended Term Rider | | | |
| ☐ Short Term Rider | | | |
| ☐ Partial | | | |
| ☐ COLA .......... % | | | |

☐ Extended Benefit Rider
- ☐ 1 Year
- ☐ 4 Years

☑ Lifetime Accident and Sickness
☐ Change Benefit Period from .......... to ..........
☐ Change Waiting Period from .......... to ..........
☐ Own Occupation Rider

☐ Change Occupation Class from ..... to ..... State new job title, description of duties (% time in each) and length of time in new position.

☐ Extend Delivery Period
☐ Other

☐ Reconsider Rating (If rating is for medical reasons, a non-medical Part 2 must accompany this request)

INSURABILITY

8. Have you within the past 3 years:

A. Flown as a pilot or student pilot, participated in any avocation such as motor vehicle racing or scuba diving, or is any such activity contemplated? Yes ☐ No ☑

B. Been involved in a motor vehicle accident or charged with a moving violation of any motor vehicle law or had your license suspended? Yes ☐ No ☑

C. What is your current occupation? *Stock Broker*

D. Have you been actively at work on a full-time basis for the past 90 days? Yes ☑ No ☐

E. Do you plan any foreign travel or residence? ☐ Yes ☑ No

9A. Have you ever been treated for or had any known indication of alcoholism or drug use, high blood pressure, diabetes, cancer or disorder of the heart, lungs, liver, or kidneys? Yes ☐ No ☑

B. Height *5* ft. *9* in. Weight *180*

C. Have you smoked cigarettes within the last 12 months? Yes ☑ No ☐

D. Have you within the past 5 years had any mental or physical disorder, illness or surgery, or been a patient in a hospital or other medical facility? Yes ☐ No ☑

10. Personal Physician

A. Name and address of your personal physician? (If none, so state) ..........

B. Date and reason last consulted? ..........

C. What diagnosis was made and what treatment prescribed? ..........

11. Has any insurance or annuity contract on your life terminated in the last six months? Do you plan to replace, change or borrow against any life insurance and/or annuity contract now in force on your life? If so, submit required papers. ☐ Yes ☐ No

Please explain all "yes" answers in this space. If medical, please provide name and address of doctor or hospital.

I have read all statements and answers in this application and represent that they are true and complete to the best of my knowledge and belief, and agree that they shall be the basis of and a part of the consideration for the change(s) applied for.

I have received a Notice of Insurance Information Practices.

[signature] Signature of Insured — *8-9-88* Date

**AUTHORIZATION TO RELEASE INFORMATION**

Connecticut Mutual Companies
140 Garden Street, Hartford, CT 06115

I authorize any of the following, licensed physician; health professional; hospital; clinic; other medically related facility, insurance company; reinsuring company; MIB Inc.; consumer reporting agency; or employer that has any record or knowledge of me, or of my health to give to Connecticut Mutual Life Insurance Company, C.M. Life Insurance Company, and CML Pension and Life Insurance Company or their reinsurers all such information. I permit Connecticut Mutual, C.M. Life and CML Pension and Life to give to MIB Inc., a brief report of this information.

1. This information will be used to determine eligibility for life or disability insurance.
2. All medical information may be released. This includes: medical history; mental or physical condition; diagnosis; prognosis; and treatment.
3. This release shall be valid for thirty (30) months from its date. It applies to my minor child if he or she is a proposed insured.

A copy of this is as valid as the original. I have the right to receive a copy.

DATE *8-9-88* — Print Name of Proposed Insured *Terry D. Altland*

WITNESS [signature] — Signature of Proposed Insured, Parent or Guardian of Minor [signature]

F394-83

*8 of 9*

**MassMutual**

**Kenneth Taffe**
*Customer Relations Consultant*
Compliance & Ethics Department
1295 State Street, C410
Springfield, MA 01111-0001
CustomerRelations@massmutual.com
Office: 800-487-7844, x41974
Fax: 888-599-0010

March 22, 2023

MICHIGAN DPEARTMENT OF INSURANCE AND
FINANCIAL SERVICES
530 W. ALLEGAN ST. 7TH FL.
LANSING, MI 48933

ATTN: TACARRA SHELTON

**Uploaded via email: sheltont@michigan.gov**

Re: Department File: 213154-001
Complainant: Terry D Altman
Policy: 4771170
Policy Situs: Michigan
Policyowner: Terry D Altman
Company: Massachusetts Mutual Life Insurance Company (referred herein as "MassMutual")
NAIC #: 65935

Dear Ms. Shelton,

I am writing in response to your inquiry addressed to Timothy Finamore on March 20, 2023. In your inquiry, you requested MassMutual provide response to Mr. Altman's concerns regarding the Disability Income insurance policy and your department file number identified above. Additionally, you inquire if MassMutual notified Mr. Altman of the requirements needed to complete the underwriting process for adding the Lifetime Accident and Sickness rider to his policy.

In the complaint Mr. Altman submitted to your office, he reiterates allegations that Financial Professional, Sharon Viano, misrepresented his disability policy as having a lifetime benefit period. Additionally, Mr. Altman alleged he remitted payment for the lifetime benefit period to Ms. Viano. In consideration of his concern, Mr. Altman states "please reconsider your previous findings based upon these facts".

As you know correspondence communicating similar information contained in this response to your inquiry was previously provided to your office on January 18, 2023. In the event you have any questions or if you require a copy of the previous correspondence to your office, please feel free to contact me.

Exhibit 4

Thank you for the opportunity to address the concern raised by Mr. Altman. Please know, Ms. Viano is not an agent of MassMutual, she is an independent insurance broker and was so at the time of Mr. Altman's purchase. As such, she represents the policyowner. She does not represent MassMutual and we are not liable for her actions.

Turning to Mr. Altman's benefit period concern and your underwriting notification inquiry. Contrary to his assertion, there is no evidence to support the allegations conveyed in his correspondence to your office.

MassMutual records support Mr. Altman's completed application for disability insurance was signed and dated May 18, 1988. Mr. Altman's application denotes he elected a monthly disability benefit amount of $5,400.00, waiting period of 180 days, and benefit period to age 65. In signing the application Mr. Altman affirmed all statements and answers are true, complete, and correctly recorded.

Mr. Altman's policy was issued on June 10, 1988. The Coverage Page of Mr. Altman's policy reflects his policy was issued in accordance with the application. Included as **Attachment A** is a copy of Mr. Altman's policy and application.

MassMutual records support a supplementary application dated August 9, 1988, was received. The supplementary application requested the Lifetime Accident and Sickness Rider (the "Rider") be added to the policy. This optional Rider provides a monthly benefit after the insured's age 65 if they are totally disabled before age 55. A Financial Report is required to amend the policy to include this rider. Please know, applying for the addition of the Rider does not guarantee approval.

As denoted on the supplementary application, the Rider is not in-force or binding until the application has been approved. In order to be considered for approval, all application requirements must be met. The application process requires Financial Professional involvement. As such, when there are outstanding requirements, MassMutual notifies the office of assigned Financial Professional, not the policyowner.

MassMutual records reflect we received a message from the office of the Financial Professional dated September 30, 1988. This message appears to be in response to the office of the Financial Professional being informed of the outstanding requirements as it states the office was "awaiting a new financial report from Mr. Altman. He is having a personal problem at the moment and the agent can't pin him down to write up the report".

Additionally, the message asks if the requirements for Rider approval can be remitted later, to which a reply of "yes" is noted. MassMutual records support no

subsequent requests to add the Rider to Mr. Altman's policy were ever received and Mr. Altman was never billed for the Rider. Included as **Attachment B** is a copy of the supplementary application and September 1988 message.

In completing my review, based on the above, MassMutual has administered Mr. Altman's policy in accordance with its terms. As Ms. Viano is an independent insurance broker, any concerns Mr. Altman may have with Ms. Viano's actions regarding this policy should be addressed directly with her as we are not her supervising broker/dealer.

In closing, I respectfully submit further consideration of Mr. Altman's request to change his benefit period to lifetime will not be undertaken by MassMutual.

Sincerely,

*Kenneth Taffe*

**Kenneth Taffe**

MESSAGE SERVICE

MSG NO: 740819 08:19 88/09/30

TO: LYDIA ROCKHOLT C224 NRR

FROM: CATHY MISENER A001 RE MSG NO:

SUBJECT: TERRY D ALTMAN #22250

WE WERE AWAITING A NEW FINANCIAL REPORT FROM MR ALTMAN. HE IS HAVING A PERSONAL PROBLEM AT THE MOMENT AND THE AGENT CAN'T PIN HIM DOWN TO WRITE UP THAT REPORT. THE AGENT WANTS TO KNOW IF WE CAN REPORT THE CASE AS ORIGINALLY WRITTEN (THAT POLICY IS HERE IN MY HANDS) AND DO A POLICY CHANGE AT A LATER DATE. THE PERSONAL PROBLEM IS NOTHING TO BE CONCERNED ABOUT FROM AN UNDERWRITING STATUS. WE HAVE THE MONEY IN SUSPENSE TO REPORT. PLEASE ADVISE. THANKS.

yes.
LCR 10/6

Exhibit 5



MassMutual
1295 State Street
Springfield MA 01111-0001
www.MassMutual.com

JUN 06 2024

July 25, 2023

***B115***
TERRY ALTMAN

FAIR HAVEN MI 48023

Re: Policy No(s). 4771170; Insured - Terry Altman

Thank you for your response.

I have reviewed your original file and it appears that an exception was made by the underwriter not to wait for financial documentation to approve and issue your policy. Unfortunately, I am not able to find any further information regarding this and I did not find copies of any financial documents.

I hope this addresses your concerns. If you have any questions, please contact our Service Center at **1-800-272-2216**. Representatives are available to help you Monday through Friday from 8 a.m. to 8 p.m., Eastern Time.

Sincerely,

*Amy Riley*

Amy Riley
Policyholder Services Specialist
Disability Income



Exhibit 6

JUN 06 2024